CITY OF SOUTH EUCLID, APPELLANT, *v.* RICHARDSON, APPELLEE.
CITY OF SOUTH EUCLID, APPELLANT, *v.* RICHARDSON, APPELLEE.

[Cite as South Euclid *v.* Richardson (1990), 49 Ohio St. 3d 147.]

(No. 88-1885—Submitted November 22, 1989—Decided March 7, 1990.)

*Jones, Day, Reavis & Pogue, Dennis M. Kelly* and *Albert J. Lucas, Victor E. DeMarco,* law director, and *Robert P. DeMarco,* for appellant.

*Berkman, Gordon, Murray & Palda, J. Michael Murray* and *Ann N. Butenhof,* for appellees.

*Lois Robinson,* urging affirmance for *amicus curiae,* American Civil Liberties Union of Cleveland Foundation, Inc.

*Per Curiam.* On October 14, 1986, the Council of the city of South Euclid passed Ordinance No. 36-86. The ordinance makes it a first degree misdemeanor for any person to own, operate, maintain or manage a brothel and defines "brothel," in relevant part, as follows:

"* * * any place, house or dwelling maintained and/or operated by any person, organization, club or association, for the purposes of engaging in group sex, sexual conduct and sexual acts, as herein defined, lewdness or acts of gross and wanton indecency in sexual relations or other sexual activity which corrupts or tends to corrupt the morals of persons in the community."

On December 30, 1986, each of the defendants was charged with violating Ordinance No. 36-86, as set forth in the Codified Ordinances of the city of South Euclid. Upon motions to dismiss in the South Euclid Municipal Court, the court dismissed the charges against both defendants, holding that the term "brothel" as defined in the ordinance makes the ordinance void for vagueness and overbroad. The court of appeals affirmed.

We adopt the August 29, 1988 decision of the court of appeals, which decision is attached as an Appendix to this entry, and affirm the decision of the court of appeals for the reasons stated therein.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, WRIGHT and RESNICK, JJ., dissent.

## APPENDIX

DAVID T. MATIA, P.J.

In case No. 54247, plaintiff-appellant, the city of South Euclid, appeals from the South Euclid Municipal Court's dismissal of plaintiff-appellant's criminal complaint against defendant-appellee Daiva Richardson. In case No. 54248, plaintiff-appellant, the city of South Euclid, appeals from the South Euclid Municipal Court's dismissal of plaintiff-appellant's criminal complaint against defendant-appellee Ronnie Richardson.

Pursuant to this court's order of August 28, 1987, in response to South Euclid's motion to consolidate appeals, and in accordance with App. R. 3(B) and Eighth District Court of Appeals Local Rule 3(B)(3), case No. 54247, *South Euclid* v. *Daiva Richardson,* and case No. 54248, *South Euclid* v. *Ronnie Richardson,* were consolidated for appeal and are therefore discussed and decided together.

On October 14, 1986, the South Euclid City Council, by a vote of 6-0, passed South Euclid City Ordinance No. 36-86, designating it an emergency ordinance:

"Section 1. That Section 666.01 Definitions, as contained in Chapter 666, Sex Related Offenses, of Part Six-General Offenses Code of the Codified Ordinances of the City of South Euclid, Ohio be and the same is hereby amended by adding, thereto, new subsections 'l' and 'm' to read as follows:

" '666.01 DEFINITIONS

"['](l) "Brothel" means any

place, house or dwelling maintained and/or operated by any person, organization, club or association, for the purposes of engaging in group sex, sexual conduct and sexual acts, as herein defined, lewdness or acts of gross and wanton indecency in sexual relations or other sexual activity which corrupts or tends to corrupt the morals of persons in the community.

"['m] "Lewdness" means sexual conduct or relations of such gross indecency and so notorious as to corrupt community morals.'

"Section 2. That Section 666.07, Procuring, as contained in Chapter 666, Sex Related Offenses, of Part Six-General Offenses Code of the Codified Ordinances of the City of South Euclid, Ohio be and the same is hereby amended to read as follows:

" '666.07 BROTHEL; PATRONIZING; PROCURING; PROSTITUTION.

" '* * *

"['](c) NO PERSON, ORGANIZATION, CLUB OR ASSOCIATION SHALL OWN, OPERATE, MAINTAIN OR MANAGE A BROTHEL OR SOLICIT, INVITE OR ENTICE ANOTHER TO PATRONIZE A BROTHEL OR TO ENGAGE IN ACTS OF LEWDNESS OR SEXUAL CONDUCT AS HEREIN DEFINED.

"['](d) WHOEVER VIOLATES THIS SECTION IS GUILTY OF A MISDEMEANOR OF THE FIRST DEGREE AND SHALL BE PUNISHED AS PROVIDED IN SECTION 698.02.[']

" '* * *

"Section 4. That this Ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, safety and welfare of the City, and for the further reason that same is necessary in the current operation of the Police Department. Wherefore,

this Ordinance shall take effect upon passage and approval."

Ordinance No. 36-86 amended two then-existing sections, 666.01 and 666.07, of the Codified Ordinances of the city of South Euclid. Section 666.01 was amended by adding definitions of "brothel" and "lewdness" to the codified ordinances. Section 666.07 was amended by adding paragraphs (c) and (d).

At some point subsequent to the passage of Ordinance No. 36-86, although the exact date is not clear from the record, Codified Ordinance No. 666.01 was renumbered to 533.01, and Codified Ordinance No. 666.07 was renumbered to 533.08.

On December 30, 1986, defendants-appellees, Daiva Richardson and Ronnie Richardson, were each charged in separate complaints with operating a brothel in violation of South Euclid Codified Ordinance Section 533.08(C), a first degree misdemeanor. Both defendants-appellees entered pleas of not guilty to the charges.

On March 13, 1987, the appellees filed identical motions to dismiss the complaints filed against them, with identical memoranda in support of the motions. On that same date, the American Civil Liberties Union of Cleveland ("ACLU") filed a motion for leave to file a brief as *amicus curiae.*

The appellees' motions to dismiss the complaints alleged that Ordinance No. 36-86 was "unconstitutional on its face and as applied," citing the following reasons: vagueness, overbreadth, abridgement of freedom of association, abridgement of a right to privacy, and a denial of equal protection. On April 27, 1988, the ACLU filed a brief which argued that the statute was "unconstitutionally vague and facially invalid."

On April 27, 1987, an oral hearing on appellees' motions to dismiss was

held in the South Euclid Municipal Court. No transcript of this hearing is included in the record on appeal. On May 12, 1987, South Euclid filed a brief in opposition to appellees' motions to dismiss, claiming, *inter alia,* that Ordinance No. 36-86 is "neither vague [nor] overbroad."

On June 26, 1987, the South Euclid Municipal Court issued a twenty-one-page opinion, dismissing the charges against both appellees. The court found that:

"* * * [L]egislation must satisfy the requirements of the law and meet the standards of, and not be in conflict with, the Constitutions of the United States and [the] State of Ohio. It is these requirements and standards that Ordinance [No.] 36-86 does not meet." (Trial opinion at 5.)

Specifically, the court held that the statute was vague in its definition of the word "brothel" (Section 533.01 [L]). The court examined exhaustively each term used by the city in its attempt to define "brothel" and noted the following at page 19 of its opinion:

"* * * The problem here, as previously explained, is that the definition of 'brothel' in Section 533.01(L) is completely different from the well-accepted, long-standing meaning in the law of 'brothel[.]' In this Court's opinion[,] no one of ordinary or even superior intelligence would define 'brothel' in the manner set forth in Section 533.01(L); therefore, the Prosecutor's argument that Section 533.01(L) is not vague and overbroad because any citizen of ordinary intelligence knows what a 'brothel' is cannot withstand analysis. Simply stated, it is true that ordinary citizens know what a 'brothel' is, but this fact cannot save 533.01(L). This is so because no one could anticipate that 'brothel' had the meaning attributed to it by Section 533.01(L), and Section

533.01(L) is written in a manner that cannot withstand constitutional analysis."

The charges against the appellees were dismissed. From this dismissal, South Euclid appeals.

South Euclid submits the following assignment of error:

"The trial court erred in granting each defendant's motion to dismiss [the] complaint and in discharging each such defendant."

The trial court set forth three reasons behind its decision that the South Euclid ordinance under which the appellees were charged is unconstitutional: "* * * [T]he manner in which 'brothel' is defined in Section 533.01(L) is void for vagueness, overbreadth and is unconstitutional on its face." (Trial opinion at 5-6.)

A statute is void for vagueness if it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' " *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156, 162. The Ohio Supreme Court has stated that "* * * 'the proper standard for determining if a statute is vague is found in *Connally* v. *General Construction Co.* (1926), 269 U.S. 385 * * *.' " *State* v. *Young* (1980), 62 Ohio St. 2d 370, 372, 16 O.O. 3d 416, 417, 406 N.E. 2d 499, 501.

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential

of due process of law. * * *" (Citations omitted.)" *State* v. *Young, supra.* See, also, *Cleveland* v. *Arcano* (1983), Cuyahoga App. Nos. 45076 and 45077, unreported.

A statute is overbroad "* * * when the scope of the statute is so broad that it includes activity which would otherwise be legal. * * *" *State* v. *Forbes* (Aug. 9, 1979), Cuyahoga App. No. 40879, unreported, at 3, affirmed *sub nom. State* v. *Young, supra.* As noted in *NAACP* v. *Alabama* (1964), 377 U.S. 288, 307:

"This Court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. * * *"

See, also, *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 114, where the United States Supreme Court stated:

"A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." (Footnote omitted.)

The definition of "brothel" set forth in South Euclid Ordinance No. 36-86 is:

" 'Brothel' means any place, house or dwelling maintained and/or operated by any person, organization, club or association, for the purposes of engaging in group sex, sexual conduct and sexual acts, as herein defined, lewdness or acts of gross and wanton indecency in sexual relations or other sexual activity which corrupts or tends to corrupt the morals of persons in the community."

We note that the definition requires the "place, house or dwelling" which is allegedly a brothel be "maintained and/or operated * * * for the purposes of engaging in group sex,

sexual conduct and sexual acts, *as herein defined* * * *." (Emphasis added.) But, as pointed out by the trial court:

"* * * This Court has searched the South Euclid Ordinances and it cannot find such definitions. If an ordinance makes certain activities a crime and then states that a definition of such activities will be set forth therein so that a citizen will understand what is illegal and what is not and can govern his conduct accordingly, that citizen is entitled to be apprised of the definition which the ordinance promises will be afforded to him. * * *" (Footnote omitted.) (Trial opinion at 11.)

The clear result of the failure by the city of South Euclid to set forth the definitions of the prohibited conduct means that persons who may be subject to the ordinance are not given "a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned* v. *City of Rockford, supra,* at 108. See, also, *State* v. *Young, supra,* at 372-373, 16 O.O. 3d at 417, 406 N.E. 2d at 501.

Although men of "reasonable intelligence" may understand the meaning of "group sex," absent a definition of sexual conduct or sexual acts, it is impossible to know what kinds of sexual relations are prohibited by Ordinance No. 36-86.

A review of the Ohio Revised Code makes clear another fundamental problem with Ordinance No. 36-86 — overbreadth. "Sexual acts" and "group sex" are not defined, but "sexual conduct" is defined in R.C. 2907.01(A):

" 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

Under appellant's ordinance, then, if the above definition were incorporated into Ordinance No. 36-86 and any of the activities listed in the above definition occurred between a married, heterosexual couple within the South Euclid city boundaries, the activities would be unlawful under the ordinance as it reads, yet these activities are clearly constitutionally protected. *Griswold* v. *Connecticut* (1965), 381 U.S. 479.

Furthermore, if the city of South Euclid did not intend to regulate sexual activities between married heterosexual couples, which we assume it did not, then a reading of the entire definition of "brothel" in Ordinance No. 36-86 makes it virtually impossible to determine what activities appellant did intend to regulate.

Reliance on the final phrase of the "brothel" definition, "* * * which corrupts or tends to corrupt the morals of persons in the community," is of no assistance. To attempt to regulate sexual activities by the use of that standard is constitutionally prohibited, as it allows for "harsh and discriminatory enforcement by local prosecuting officials against particular groups deemed to merit their displeasure * * *." *Thornhill* v. *Alabama* (1940), 310 U.S. 88, 97-98. See, also, *Papachristou* v. *City of Jacksonville, supra,* and *NAACP* v. *Alabama, supra.*

In light of the foregoing, we find it unnecessary to discuss the other alleged infirmities of the ordinance. We hold that Ordinance No. 36-86 is unconstitutionally vague and overbroad on its face and, as a result, as applied against these appellees. The judgment of the trial court is affirmed.

We further hold, in response to appellees' request for costs and attorney fees in accordance with App. R. 23, and after a thorough and enlightening review of the entire record, that the city of South Euclid's appeal is not frivolous and, accordingly, appellees' request for damages under App. R. 23 is denied.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MARKUS and JACKSON, JJ., concur.

JAMES J. JACKSON, J., of the Court of Common Pleas of Lake County, sitting by assignment.

WRIGHT, J., dissenting. The city of South Euclid adopted an ordinance aimed at restraining sexual permissiveness. Specifically it outlawed maintaining a brothel for purposes of sexual activity such as group sex. Admittedly, the ordinance is not a model of clarity. However, I think it disingenuous to imply that a reasonable person would not understand terms such as "sexual conduct," "sexual activity," or "group sex." In light of well-established principles of analysis pertaining to vagueness and overbreadth, I must dissent from the majority's holding that South Euclid's Ordinance No. 36-86 is unconstitutional.

The void-for-vagueness inquiry turns on two questions. The court of appeals took note of the first, which is whether the ordinance puts a person of ordinary intelligence on notice of what conduct the statute forbids. As we held in *State* v. *Young* (1988), 37 Ohio St. 3d 249, 252, 525 N.E. 2d 1363, 1368, "* * * [a]ny term which is not defined by a statute is accorded its common, ordinary meaning. * * *" The meaning of "group sex" is sufficiently clear to a person of ordinary intelligence, as the court of appeals conceded. Moreover, R.C. 2907.01(A) defines "sexual con-

duct" in what I consider sufficiently specific terms to supply the requisite notice.[1] It strains credulity to suggest that the Richardsons could not have known the nature of the sexual acts proscribed by the ordinance.

The second question, not addressed by the court of appeals, is whether the alleged vagueness in the ordinance proscribed the actual conduct of the Richardsons. If the vague language pertains only to hypothetical conduct in which the defendants were not alleged to have engaged, the statute is not void as a result. As the United States Supreme Court explained in *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601, 608: "* * * [E]ven if the outermost boundaries of * * * [a statute] may be imprecise, any such uncertainty has little relevance here, where * * * [defendants'] conduct falls squarely within the 'hard core' of the statute's proscriptions * * *." The court of appeals' speculation about a married couple being prosecuted for sexual conduct under the ordinance is beside the point. The ordinance is not void for vagueness if the activities of which the defendants here were accused are clearly proscribed by the ordinance, even if other proscriptions of the same ordinance are so vaguely worded as not to put ordinarily intelligent persons on notice of what conduct is unlawful.

Unfortunately, because the case was dismissed, no factual record was developed at trial. Appellant suggests, however, that had it been able to proceed it would have shown that the defendants for a $25 fee conducted regularly scheduled group sex parties at their residence which the plain and unambiguous "hard core" of Ordinance No. 36-86 prohibits. Moreover, by outlawing group sex parties, the city of South Euclid did not violate a fundamental constitutional right. In *Bowers* v. *Hardwick* (1986), 478 U.S. 186, the United States Supreme Court refused to extend the constitutional protection afforded sexual relations between a married couple by *Griswold* v. *Connecticut* (1965), 381 U.S. 479, to sexual relations between homosexual or other consenting adults, *id.* at 195-196, including, presumably, attendees at group sex parties.

The courts below also held the ordinance to be overbroad on its face and as applied. Unlike vagueness, facial overbreadth can invalidate a statute based on hypothetical applications that would prohibit constitutionally protected activities, even if defendants' alleged actual conduct was clearly proscribed by the statute. See, *e.g.*, *Coates* v. *Cincinnati* (1971), 402 U.S. 611; *Dombrowski* v. *Pfister* (1965), 380 U.S. 479. However, as we noted in *State* v. *Young, supra,* at 251, 525 N.E. 2d at 1367: "* * * Where * * * a statute regulates conduct rather than pure speech, *its overbreadth '* * * must not only be real, but substantial as well,* judged in relation to the statute's plainly legitimate sweep.' *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601, 615." (Emphasis added.) Ordinance No. 36-86 does not regulate pure speech but sexual conduct, and its intended "plainly legitimate sweep" is prohibition of such constitutionally unprotected activities as group sex and sexual conduct among persons who are not married to each other, activities associated with the operation of a

---

[1] R.C. 2907.01(A) defines "sexual conduct" as follows:

" 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

brothel. When pure speech is not involved, the United States Supreme Court has refused to declare a statute unconstitutional on account of facial overbreadth unless "* * * it reaches a substantial number of impermissible applications. * * *" *New York* v. *Ferber* (1982), 458 U.S. 747, 771. The only plainly impermissible application of the ordinance put forth by the court below was prosecution of a husband and wife for operating a brothel by engaging in marital relations alone in their own home. Given the legitimate purpose of the ordinance and the great unlikelihood of such an application, I cannot agree that the ordinance is overbroad on its face. See *State* v. *Diana* (1976), 48 Ohio St. 2d 199, 2 O.O. 3d 387, 357 N.E. 2d 1090, certiorari denied (1977), 431 U.S. 917.

If the ordinance is not overbroad on its face, it cannot follow that it is therefore overbroad as applied. For the application of Ordinance No. 36-86 to the Richardsons to be overbroad as applied, the actual conduct for which they were prosecuted would have to enjoy constitutional protection. But as noted above, in *Bowers, supra,* the United States Supreme Court refused to extend the fundamental right of privacy announced in *Griswold, supra,* to anyone other than married couples. Had it been allowed to proceed, the city of South Euclid would have had an opportunity to show how it applied the ordinance to the specific conduct of the Richardsons in operating a brothel,[2] and the trial court could have decided whether their alleged conduct was constitutionally protected or permissibly proscribed by the ordinance.

For the foregoing reasons, I would reverse the judgment of the court of appeals and remand the cause for trial.

DOUGLAS and RESNICK, JJ., concur in the foregoing dissenting opinion.

---

[2] Webster's Third New International Dictionary (1986) 284, defines "brothel" as follows:

"* * * an establishment (as a house or apartment) in which prostitutes are domiciled and ply their trade usu. as employees or on a commission basis, the keeping of such an establishment being at common law and usu. by statute a misdemeanor[.]"