**Daiva RICHARDSON and Ronnie Richardson, Plaintiffs–Appellants,**

**v.**

**CITY OF SOUTH EUCLID; Arnold C. D'Amico; Jack Clifford; James Farrell; and John Doe, Defendants–Appellees.**

No. 89–3056.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1989.

Decided June 11, 1990.

Rehearing and Rehearing En Banc Denied July 26, 1990.

Bruce C. Allen (argued), Cleveland, Ohio, for plaintiffs-appellants.

Dennis M. Kelly (argued), Albert J. Lucas, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants-appellees.

Before MERRITT, Chief Judge; and RYAN, Circuit Judge; and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

This case presents the question whether a criminal misdemeanor prosecution under an ordinance later determined to be constitutionally invalid gives rise to a 42 U.S.C. § 1983 injury where no deprivation other than that suffered as a result of maintaining a legal defense is sustained by the party prosecuted. We conclude that criminal prosecution alone does not result in a constitutional deprivation or support a section 1983 claim, and we affirm the district court's summary judgment dismissing the plaintiffs' action.

I.

Plaintiffs Ronnie and Daiva Richardson are a married couple who moved to South Euclid, Ohio in May of 1986. In October of 1986, the City of South Euclid passed an ordinance which made it a misdemeanor to "own, operate, maintain or manage a brothel" or to "invite or entice another to engage in acts of lewdness or sexual conduct" as defined elsewhere in the city's code. In December of 1986, the Richardsons were charged with violating that ordinance.

On June 26, 1987, the charges against the Richardsons were dismissed when the Municipal Court of South Euclid found the ordinance to be vague, overbroad, and unconstitutional on its face under the first and fourteenth amendments to the United States Constitution. The City of South Euclid appealed, and the Ohio Court of Appeals affirmed the municipal court's ruling. On March 7, 1990, the Ohio Supreme Court likewise affirmed the appellate court's judgment, adopting its opinion. *See City of South Euclid v. Richardson*, 49 Ohio St.3d 147, 551 N.E.2d 606 (1990).

In the meantime, the Richardsons filed a 42 U.S.C. § 1983 suit in the district court against the City of South Euclid, its mayor, its police lieutenant, the president of the city council, and various unnamed civil servants. They claimed to have suffered humiliation, emotional distress, physical harm, loss of earnings, and legal expenses as a result of their defense against the prosecution, and sought $250,000 in damages. In due course, the district court granted a motion for summary judgment in favor of the city and its officials. Although concluding that it was bound by the municipal court's decision as to the unconstitutionality of the ordinance, even with the appeal of that ruling then pending before the Ohio Supreme Court, the court found no constitutional deprivation sufficient to support the Richardsons' section 1983 suit. The Richardsons appeal the summary dismissal which we review *de novo*. *Burkart v. Post–Browning, Inc.*, 859 F.2d 1245, 1249 (6th Cir.1988).

Summary judgment will be affirmed if "there is no genuine issue as to any material fact" and the city and officials are entitled to "a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## II.

■ As an initial matter, we note that the district court did not err in considering itself bound by the municipal court's decision that the ordinance in question was unconstitutional by virtue of the doctrine of *collateral estoppel* despite the fact that an appeal of that decision, as affirmed by the court of appeals, was then pending before the Ohio Supreme Court. "Issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984), citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). And, Ohio authority supports the proposition that issues actually litigated and decided in one lawsuit, albeit appealed, bind the same parties in subsequent litigation. *See Ashley v. Ashley,* 118 Ohio App. 155, 160, 193 N.E.2d 535, 539 (1962), *cited favorably in Cully v. Lutheran Medical Center,* 37 Ohio App.3d 64, 65, 523 N.E.2d 531, 532 (1987).

■ The Ohio Supreme Court's decision rendered during the pendency of the Richardsons' appeal to this court, affirming the municipal court's decision that the ordinance in question was unconstitutional, eliminates any question as to whether we are bound on that issue. We are obliged to accept the Ohio courts' judgment that the ordinance giving rise to this litigation is constitutionally infirm under Ohio *collateral estoppel* principles. *See Whitehead v. Gen. Tel. Co. of Ohio,* 20 Ohio St.2d 108, 112, 254 N.E.2d 10, 13 (1969), *cited favorably in Kelly v. Georgia–Pacific Corp.,* 46 Ohio St.3d 134, 137, 545 N.E.2d 1244, 1248 (1989).

## III.

We next examine whether the Richardsons, having been prosecuted under an unconstitutional ordinance, suffered a constitutional deprivation sufficient to support a claim under 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### A. Due Process Deprivation

The Richardsons argue that the hardship they suffered as a result of South Euclid's unsuccessful prosecution amounted to a constitutional deprivation. Specifically, they assert the loss of a liberty interest as a result of being required to bear the burdens associated with defending against a criminal prosecution brought under an invalid ordinance.

■ A state induced deprivation of liberty can provide a valid basis for claiming section 1983 damages pursuant to the fourteenth amendment to the United States Constitution. But, "[t]he Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty 'accomplished without due process of law.'" *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

In *Baker,* a law-abiding citizen sued a county sheriff under section 1983 for damages resulting from his arrest and incarceration by police officers who concluded, arguably negligently, that the arrestee was actually his recalcitrant brother. Reversing the appellate court's implicit holding that the respondent had suffered a constitutional injury as the result of his erroneous incarceration, the Supreme Court held that "[h]aving been deprived of no rights secured under the United States Constitution, respondent had no claim cognizable under § 1983." *Id.* at 146–47, 99 S.Ct. at 2696. The Court stated:

> Respondent was indeed deprived of his liberty for a period of days, but it was

pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment.... We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 144–45, 99 S.Ct. at 2694–95.

■ Similarly, a prosecution under a presumptively valid municipal ordinance, later determined to be invalid, does not, of itself, deprive the person prosecuted of any liberty interest recognized by our Constitution. The prosecution itself is the observance of process due the accused. The Richardsons were not convicted without notice and trial. They were charged in writing, permitted an opportunity to respond in open court, and vindicated by the dismissal of all charges after the municipal court found the ordinance unconstitutional. They cannot support their section 1983 suit on the ground that they were deprived of a protected interest without due process of law solely because the ordinance was later held to be unconstitutional.

### B. Malicious Prosecution

■ The Richardsons also argue, in reliance on *Dunn v. State of Tennessee,* 697 F.2d 121 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), that, as a result of their unsuccessful prosecution, they were deprived of a constitutionally protected interest "in avoiding criminal prosecution" sufficient to sustain their section 1983 suit.

*Dunn* involved a section 1983 claimant who was arrested after he refused to permit two Tennessee police officers, bearing a misdemeanor arrest warrant for his son, to enter his home. After the officers forcibly entered and searched his home, the claimant was arrested and later convicted of "interfering with the duty of a police officer." An appellate court subsequently dismissed the charge, and claimant sued the arresting officers because "the arrest, imprisonment, and prosecution deprived him '... of his liberty and his rights and privileges of being secure in his person and property.'" The district court dismissed this "malicious prosecution" claim as "devoid of any violations of constitutional rights." Reviewing that dismissal, this court held that the plaintiff stated a cause of action because his complaint alleged that the officers, acting under color of law,

> deprived [him] of his constitutional right under the Fourth Amendment, as incorporated in the Fourteenth Amendment, to be free of unreasonable searches and seizures ... by arresting and prosecuting him because he attempted to exercise that right.

*Id.* at 126.

*Dunn,* as the Richardsons assert, could support the proposition that malicious state prosecution may underlie a section 1983 claim. But, we said in *Dunn* that to state a claim for malicious prosecution under section 1983 a plaintiff must allege

> the misuse of a legal proceeding so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension, and the tortfeasor is acting under the color of state law.

*Id.* at 125. State prosecution for refusal to waive one's fourth amendment rights is not the same as prosecution under an untested, presumptively valid, city ordinance. Where the former subjects an individual to "a deprivation of constitutional dimension," the latter does not.

Our reluctance to extend the sphere of protected interests for which section 1983 compensation may be sought conforms with Supreme Court precedent. *See, e.g., Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). In *Paul,* the Supreme Court considered whether police publication of a list, including photographs, of "active shoplifters" gave rise to a section 1983 claim by one

who appeared on the list after once being charged with shoplifting—a charge ultimately dismissed. The Supreme Court held:

> Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.

*Id.* 424 at 712, 96 S.Ct. at 1166.

In so ruling, the Supreme Court stated, in a general way, the test for determining whether an alleged interest is constitutionally protected. The Court said:

> There exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law....

Other interests attain constitutional status directly "because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Id.* at 710 n. 5, 96 S.Ct. at 1169 n. 5. Freedom from criminal prosecution is not an interest that is accorded constitutional protection. Where appropriate procedures are followed, the states recognize no interest to be free from the burdens of defending oneself against an unsuccessful prosecution, and neither does the Bill of Rights.

Moreover, our reluctance to extend the sphere of protected interests for which section 1983 compensation may be sought conforms with our own precedent. *See Bacon v. Patera,* 772 F.2d 259 (6th Cir.1985). In *Bacon,* a private investigator brought a section 1983 action against a police chief who had cited him for refusing to purchase a $50 commission allegedly needed to practice his trade. The investigator went to court three times, pleading not guilty to

each violation alleged. Ultimately, the trial court dismissed the case because, although the ordinance gave the police chief the authority to issue commissions, it did not require private investigators to obtain them. The investigator then sued the police chief under section 1983, in conjunction with a state claim, for malicious prosecution. He based his suit, in part, on an alleged deprivation of due process under the fourteenth amendment. *Id.* at 262. He claimed the police deprived him of his "right to a good reputation and his right to engage in his occupation." *Id.* at 263.

This court ruled that the plaintiff demonstrated a sufficient deprivation of his liberty interest on the facts alleged but only because, in addition to defending himself in court, he had lost a job as a direct result of the police chief's actions. *Id.* at 263–64.

The Richardsons have alleged no loss beyond the inconvenience of defending themselves in court. They cannot support their section 1983 suit on the ground that they were deprived of some interest constitutionally recognized, even if not fitting within the "liberty" or "property" analysis.

### C. Automatic Section 1983 Claim

■ The Richardsons also argue for a rule of law whereby prosecution under an ordinance subsequently deemed invalid as unconstitutional automatically gives rise to a cause of action under section 1983. Apparently it is the unconstitutionality of the law itself that, they allege, should supply the constitutional element underlying a section 1983 claim.

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court addressed an argument very close to the one the Richardsons now raise. The *Carey* Court was asked whether substantial, rather than merely nominal, damages should be presumed under section 1983 from a deprivation of procedural due process because that privation "inevitably arouses strong feelings of mental and emotional distress in the individual who is denied [the] 'feeling of just treatment.'" *Id.* at 261, 98 S.Ct. at 1051. The Court concluded:

Although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

*Id.* at 264, 98 S.Ct. at 1052.

Two of the Court's reasons for refusing to presume that damages necessarily result from a denial of procedural due process are instructive in determining whether we can presume a section 1983 cause of action from prosecution under an ordinance later determined to be unconstitutional. First, the court in *Carey* said:

> Where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But ... the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983. This ambiguity in causation ... provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.

*Id.* at 263, 98 S.Ct. at 1052.

Applying that rationale here, it follows that the Constitution does not recognize a *per se* cause of action for persons prosecuted under a law later deemed to be facially unconstitutional as vague or overbroad. There is no entitlement to damages for one whose conduct could have constitutionally been regulated by a legislative body, but who escaped censure because of a drafting error and because he or she happened to be the first person prosecuted under the statute.

Second, the Court in *Carey* implicitly noted some concern for the integrity of the judicial function when it said:

> We foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by showing

the nature and circumstances of the wrong and its effect on the plaintiff. *Id.* at 263, 98 S.Ct. at 1052.

This suggests to us that a *per se* cause of action for persons prosecuted under a law later determined to be unconstitutional should be rejected because it would place state law enforcement officials in the precarious position of having to determine whether a new law is valid and worthy of their enforcement before risking, through enforcement, suffering damages should the law later be deemed invalid. We think the fourteenth amendment does not contemplate that state of affairs.

IV.

For the reasons stated above, we conclude that the Richardsons failed to show that they suffered any constitutional deprivation for being prosecuted under the invalid South Euclid ordinance. They were not deprived of any "liberty" interest as that term has been defined in fourteenth amendment jurisprudence, and they did not demonstrate any constitutional deprivation associated with their malicious prosecution claim. Moreover, we think the Richardsons cannot, for policy reasons, be permitted to base their section 1983 action on the fact that the ordinance under which they were prosecuted was found to be facially unconstitutional as vague and overbroad.

The judgment of the district court is AFFIRMED.

MERRITT, Chief Judge, dissenting.

Today the majority holds that individuals cannot sue a city for damages under 42 U.S.C. § 1983 (1982) if that city has subjected them to an admittedly unconstitutional ordinance. The majority spends its time searching for a deprivation of a "property" or "liberty" interest that would give rise to an action under § 1983, as though this were a procedural due process case. That search is irrelevant to the inquiry before us. Analogous to the adoption of an *ex post facto* law or a bill of attainder in violation of § 9 of Article I of the Constitution, the adoption of an unconstitutionally

vague statute is itself a constitutional violation cognizable under § 1983. It is a violation of the substance of due process of law.

If the ordinance in question is void for vagueness, then the Richardsons have been denied due process of law, assuming they can establish damages. "[A] statute which either forbids or requires the doing of an act in terms so vague that men [and women] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). A violation of "the first essential of due process of law" is certainly enough to establish a violation of § 1983. We need not proceed to search unsuccessfully in the closet of constitutional rights for another one. The majority has read an important constitutional right out of existence by insisting that the elements of another constitutional right be established as well.

A vague statute violates due process of law in two ways. First, it violates the principle that all should receive fair warning of what is permitted and what proscribed. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (statute outlawing membership in "gang" unconstitutionally vague). Second, a vague law allows law enforcement officials to pick and choose whom they will arrest and who will go free. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). If a city subjects an individual to the application of such a statute, that person has suffered a two-fold

deprivation of liberty. The majority has in effect abolished that constitutional right by refusing to enforce it.

The majority argues that "[t]he prosecution itself is the observance of process due the accused," At 1053, as though the City's attempt to put the Richardsons in jail can cleanse the unconstitutional ordinance. Such an analysis would be accurate if the City had arrested merely by mistake the wrong couple named Richardson. In that hypothetical situation, the couple could appear, prove mistaken identity, and go free. That would be analogous to *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In the case before us, however, the prosecution is not the "process due the accused"; rather, it constitutes a further violation of the Richardsons' rights. Whatever we may say about criminal prosecution generally, prosecution under a vague ordinance is an impermissible delegation of unchecked authority to the police and judges "with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2299. Surely "arbitrary and discriminatory application" of law is not the "process due the accused."

The majority next turns to the malicious prosecution argument and redoubles its confusion.[1] It asserts that "[s]tate prosecution for refusal to waive one's fourth amendment rights is not the same as prosecution under an untested, *presumptively valid*, city ordinance." At 1053 (emphasis added). Subjecting a person to a vague ordinance is "a deprivation of a constitutional dimension...." *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). The reason that the Ohio courts invalidated the ordinance is because it violated the due process clause of the Constitution. To prosecute someone under that ordinance must deprive the accused of a constitutional right. The majority's confusing talk about a "presumptively valid" ordinance hints that perhaps a city

---

**1.** Contrary to the suggestion of the majority, the Richardsons never argued in this Court that they had an action for malicious prosecution;

they merely suggested it as a situation analogous to their own. *See* Plaintiffs–Appellants' Brief at 13–14.

should be immune from § 1983 suits where it prosecutes under an untested ordinance. But immunity is another question, a possible defense. The majority does not even attempt to reach any such immunity issues or discuss the rule established by *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that under § 1983 the City's conduct must be in furtherance of an unconstitutional "policy or custom" in order for it to be liable. *Id.* at 694, 98 S.Ct. at 2037.

The majority then refers to cases that test the boundaries of what is a constitutional right. For example, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), holds that the Constitution does not secure to people a right to their good reputations. But the Constitution does protect people against vague statutes. This in and of itself constitutes a deprivation of a right. The Richardsons need show no other interest of which they have been deprived to have a cause of action under § 1983. *Cf. Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (after holding vagrancy statute vague, Court remands for further proceedings on damages issue).

Finally, the majority cites *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for the proposition that a court will not presume damages from the deprivation of a right. In other words, a plaintiff in a § 1983 action must show his or her damages in order to recover; the Court would not presume that a denial of due process caused mental or emotional damages *per se*. That problem does not seem relevant here. The Richardsons' request for damages in their complaint specifies damages that they could easily prove: loss of wages and legal expenses, along with emotional distress. Complaint ¶ 9, J.A. at 6. If the majority worries that plaintiffs cannot prove their injuries, then it should remand to the District Court for a hearing on the damages issue.

In addition, the majority ignores two important holdings of *Carey v. Piphus*. First, while *Carey* held that damages will not be presumed, it clearly held that if a person can prove actual damages caused by a deprivation of due process, he or she should recover. Second, and more important, the Court held that a due process violation "should be actionable for nominal damages without proof of actual injury." 435 U.S. at 266, 98 S.Ct. at 1054. In *Carey*, the plaintiffs could recover $1 for the violation of their due process right.

In the case before us, the Ohio Supreme Court's holding establishes the denial of due process that the Richardsons suffered. Contrary to the suggestion of the majority, the Richardsons are not asking this Court to give them an "automatic" claim under § 1983. They can show a violation of a right, and they can show their damages. Even if they cannot, they might be entitled to nominal damages under *Carey v. Piphus*. The majority worries that this puts law enforcement officials in the precarious situation of having to evaluate each new law before enforcing it. That is not a problem if such officials would be immune from suit, as I think they should be. The only party amenable to the suit should be the City. *Compare Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (good-faith immunity for government officials) *and Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity for prosecutors) *with Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (city not immune from suit under Eleventh Amendment).

In conclusion, it appears to me that the majority not only stamps out an important existing constitutional right; its holding also undermines the Ohio Supreme Court's decision that this ordinance violated the United States Constitution because it was too vague. The majority gives short shrift to the principles of comity announced in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (criminal proceeding creates collateral estoppel in subsequent § 1983 action). It grabs for itself a function reserved exclusively to the Supreme Court of the United States. Unless that Court grants *certiorari*, reverses the Ohio Supreme Court, and holds the ordi-

nance constitutional, the finding of the Ohio Supreme Court that this ordinance violates the United States Constitution—and thereby violates the rights of United States citizens—binds us in this § 1983 proceeding.