47 F.3d 1169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Allan R. HEUTON, Plaintiff-Appellee,
v.
JEFFERSON COUNTY FISCAL COURT; Harvey Sloane; David
Armstrong; Irvin Maze; Christopher Gorman; Daryl T. Owens;
Jefferson County, Kentucky; Jefferson County Police
Department; Bobby Crouch; Leon E. Jones, Sr., Defendants,
Sgt. Donald K. Dunmeyer, Sgt. Steve Mobley, Defendants-Appellants.
 No. 92-6283.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1995.
 
 Before: JONES, NELSON, and SUHRHEINRICH, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiff-Appellee Allan R. Heuton commenced this action pursuant to 42 U.S.C. Sec. 1983 (1988), against the Jefferson County Fiscal Court and other official defendants, and against Defendants-Appellants Mobley and Dunmeyer in their individual capacities. At trial, the district court denied the official defendants' summary judgment motion. The district court, however, granted in part and denied in part Dunmeyer's and Mobley's summary judgment motions, denying them with regard to Heuton's claims that: (1) Dunmeyer and Mobley's conduct during the search of Heuton's apartment was unreasonable; (2) Dunmeyer and Mobley used excessive force in arresting Heuton; and (3) Dunmeyer and Mobley conspired to injure Heuton's reputation by disseminating false information regarding Heuton. Dunmeyer and Mobley seek reversal of the district court's decision denying them summary judgment based on qualified immunity with respect to the remaining three counts against them. For the reasons stated herein, we AFFIRM the district court's denial of Defendants' Motion for Summary Judgment on the excessive force claim, and I DISSENT from the majority's decision to REVERSE the district court's denial of summary judgment to Dunmeyer and Mobley on the unreasonable search and injury to reputation claims.
 
 I.
 
 2
 On May 20, 1988, Plaintiff Allan R. Heuton left Florida with his daughter in violation of a court order. Their cross-country journey took them through Chicago and Houston before it eventually ended in Louisville, Kentucky. On May 30, 1989, Officer Dunmeyer, of the Louisville Police Department, and a social worker responded to a call from the Child Abuse Hotline regarding a possible case of child abuse. According to the staff at Humana Hospital Southwest, Heuton had appeared nervous and paranoid when he brought his daughter into the hospital for treatment, and he had given false identification to the hospital staff several times. The physician who treated the child at the hospital classified her injuries as minor and ruled out child abuse. Dunmeyer, nevertheless, asked Heuton to accompany him back to the Crimes Against Children Unit ("CACU") for further investigation. Heuton agreed, but he was not in custody and had not been placed under arrest.
 
 
 3
 At CACU, Officer Mobley, Dunmeyer's supervisor, joined Dunmeyer and Heuton in an interview room. What transpired in the interview room is unclear, but it is undisputed that there was a physical confrontation involving Dunmeyer, Mobley, and Heuton. Immediately following the confrontation, Dunmeyer and Mobley placed Heuton under arrest and charged him with criminal abuse in the first degree. A search of Heuton's person produced three birth certificates, one for his daughter and two for Heuton under the aliases of Scott Paul Reid and Brian Lee Mitchell.
 
 
 4
 After investigating, Dunmeyer discovered that Heuton, using the alias Scott Paul Reid, was involved in an ongoing sexual abuse case in Houston, Texas. Officers procured an Emergency Custody Order and took the child to Kosair Children's Hospital to be examined for sexual abuse. At the hospital, another physician examined the child. He did not see any evidence of abuse, but he did not rule out the possibility.
 
 
 5
 On June 1, 1989, Officers Dunmeyer and Ball obtained a search warrant for Heuton's residence. Dunmeyer and Mobley moved various items for documentary purposes during the search, but they maintained that they had not altered the condition of the apartment, which they claimed was in disarray--the bed was unmade and was cluttered with various items, and the kitchen table was littered with baby oil, kitty litter, and other garbage. In contrast, Detective Vic Keisker testified that just eighteen hours prior to the warrant's execution, he had been in Heuton's apartment, and it was neat and orderly. The media aired several segments from the search of Heuton's apartment on Louisville and Florida television. In addition to shots of Heuton's apartment, the media segments also contained footage of an interview in which Dunmeyer described the ongoing investigation against Heuton and detailed some of the inculpatory evidence against Heuton.
 
 
 6
 On May 20, 1990, Heuton filed this section 1983 action in the United States District Court for the Western District of Kentucky at Louisville, claiming Defendants deprived him of both his right to be free from unreasonable searches and seizures and his liberty without due process of law. He claimed that Dunmeyer and Mobley used excessive force to effectuate his arrest, and he further claimed that the officers conducted the search improperly and used the media to make false statements about him in order to depict him as a child abuser. After fifteen months of discovery, Dunmeyer and Mobley, in their individual capacities, filed a motion for summary judgment based on the defense of qualified immunity.
 
 
 7
 On September 9, 1990, the district court granted in part and denied in part Defendants' motion for summary judgment. This appeal followed.
 
 II.
 
 8
 Qualified immunity is an affirmative defense which shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights that would have been apparent to a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 815-18 (1982). A constitutional right is clearly established when the law is clear with regard to the official's particular actions in the particular situation in which the actions took place. Long v. Norris, 929 F.2d 1111, 1114 (6th Cir.), cert. denied, 112 S. Ct. 187 (1991).
 
 
 9
 The unlawfulness of the official act must be apparent to the official in light of preexisting law. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The "objective reasonableness" standard applies in determining whether a defendant should have reasonably thought that his actions were consistent with the rights that a plaintiff claims have been violated. Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir. 1988). When the official's claim of qualified immunity turns on case law, this court must focus on whether, at the time of the official's acts, the right that the plaintiff asserts was clearly established by the decisions of the Supreme Court, decisions within this circuit, and decisions in the other circuits. Daugherty v. Cambell 935 F.2d 780, 784 (6th Cir. 1991), cert. denied, 112 S. Ct. 939 (1992).
 
 
 10
 An order denying a motion for summary judgment based on qualified immunity is immediately appealable. 28 U.S.C. Sec. 1291 (1988 & Supp. V. 1993); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We review such a denial for abuse of discretion. Jackson v. Hoylman, 933 F.2d 401 (6th Cir. 1991).
 
 
 11
 Summary judgment is appropriate when the depositions, affidavits, and other evidence, viewed in the light most favorable to the non-moving party, demonstrate that no genuine issues of material fact exist, and the moving party is entitled to a decision in its favor as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 12
 In the context of a motion for summary judgment involving a claim of qualified immunity, the plaintiff bears the ultimate burden of proof to show that the defendants are not entitled to qualified immunity. Wegener v. Covington, 933 F.2d 390, 392 (6th Cir. 1991). Defendants bear only the initial burden of coming forward with facts which, if true, would establish that they were acting within the scope of their discretion. Id. With respect to matters involving qualified immunity, summary judgment is not appropriate where there is a factual dispute involving an issue on which the question of immunity turns, such that it can not be determined before trial whether the defendants committed acts that violate clearly established constitutional rights. Poe v. Haydon, 853 F.2d 418, 423-24, 426 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989); see also Jackson, 933 F.2d at 402-03 (finding that disputed fact as to whether federal marshals used excessive force in effecting arrest precluded summary judgment).
 
 III.
 
 13
 Heuton claims that Dunmeyer and Mobley used excessive force in arresting him. Claims of excessive force by law enforcement officials are analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). We judge the "reasonableness" of a seizure from the perspective of the officer on the scene, rather than with the 20/20 vision of hindsight. Id. at 396; see also Terry v. Ohio, 392 U.S. 1, 20-22 (1968). With respect to a claim of excessive force, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. Graham, 490 U.S. at 396. In evaluating claims of excessive force, courts determine reasonableness by considering the severity of the crime involved, the threat to the safety of the officer posed by the suspect, and any resistance to arrest. Id. On appeal, regardless of whether Heuton ultimately has a meritorious claim at the trial court level, Heuton must merely demonstrate a factual dispute involving an exercise of excessive force by Dunmeyer and Mobley in effecting his arrest in order to withstand a motion for summary judgment based on qualified immunity. Poe, 853 F.2d at 426. Summary judgment on a claim of excessive force is inappropriate where the parties dispute virtually all of the essential facts surrounding the excessive force claim because it is impossible to determine whether the force used was reasonable without choosing between the parties' sharply different factual accounts. Jackson, 933 F.2d at 403.
 
 
 14
 The record below presents sharply different factual accounts. The crux of Dunmeyer and Mobley's account of the events in the interview room is that Heuton had been constantly reaching towards his belt line, leading the officers to believe that he may have had a weapon concealed. Furthermore the officers claim that Heuton abruptly dropped his hands below the interview table and attempted to leave when asked to display the entire contents of his wallet. At this time, according to Dunmeyer and Mobley, Heuton fell to the floor as Dunmeyer and Mobley tried to restrain him, whereupon Heuton was patted down, searched, and had his wallet removed from his pocket. According to Heuton, however, Dunmeyer and Mobley exchanged a code word and attacked him, grabbing him by the neck, thrusting him to the ground, and striking him four or five times.
 
 
 15
 Because it was impossible to determine whether the force that Dunmeyer and Mobley used was reasonable without choosing between the parties' sharply different factual accounts, we find that the district court properly denied summary judgment on this claim.
 
 IV.
 
 16
 As noted above, the majority is reversing the district court's denial of summary judgment to Dunmeyer and Mobley on Heuton's unreasonable search and injury to reputation claims. For the following reasons, I dissent from their decision.
 
 
 17
 Heuton argues that Dunmeyer and Mobley violated his Fourth Amendment right to be free from unreasonable search and seizure through the manner in which they executed a valid search warrant at his residence.
 
 
 18
 Here, Dunmeyer and Mobley have met their summary judgment burden by producing evidence that, if proven true, would establish the following: (1) Persons other than Mobley and Dunmeyer had access to and actually entered Heuton's apartment to search and remove Heuton's belongings; (2) Mobley and Dunmeyer placed toys on Heuton's bed solely to facilitate the photographing of the items; and (3) a newsman observed Mobley and Dunmeyer while they searched Heuton's apartment (with the exception of the kitchen) and did not observe Dunmeyer and Mobley "trashing" the apartment. Although the ultimate burden remains with Heuton to show that Dunmeyer and Mobley are not entitled to qualified immunity, Heuton need only demonstrate the existence of a factual dispute involving an issue on which the question of immunity turns. Poe, 853 F.2d at 426.
 
 
 19
 The record contains factual disputes as to the condition of Heuton's residence prior to, and during the execution of the search warrant. Heuton's witnesses testified that just eighteen hours prior to the warrant's execution, the apartment was orderly. When the warrant was executed, however, the apartment was cluttered and littered with debris. Faced with these factual disputes, I believe that the district court properly denied Dunmeyer and Mobley's Motion for Summary Judgment based on qualified immunity with respect to the execution of the search warrant.
 
 V.
 
 20
 In order to sustain a section 1983 claim based upon injury to reputation, the claim must be combined with a cause of action alleging the deprivation of a liberty or property interest which is guaranteed by the Fourteenth Amendment, such as an unreasonable search and seizure. Paul v. Davis, 424 U.S. 693, 700-01 (1976); Richardson v. City of South Euclid, 904 F.2d 1050, 1053-54 (6th Cir. 1990); Bacon v. Patera, 772 F.2d 259, 263-64 (6th Cir. 1985). In the case sub judice, Heuton has satisfied this requirement by coupling his section 1983 action for conspiracy and injury to reputation with an action for a unreasonable search and seizure.
 
 
 21
 Heuton's claim that Dunmeyer and Mobley altered the condition of his apartment are discussed at length supra. In addition, the record, viewed in the light most favorable to Heuton, supports the district court's finding that genuine issues of material fact exist with respect to Heuton's claim that Dunmeyer and Mobley conspired to disseminate false information about him. The child's babysitter testified in a deposition that she had informed Dunmeyer that the child had hurt her arm on a coffee table while under the babysitter's care, that the child had never complained of a burning sensation when she urinated, that she had never seen a bruise on the child's face, and that while the child told everyone, "Don't hit me," she had never heard the child say, "Daddy, don't hit me." Dunmeyer's investigative report, however, states that the babysitter had denied knowing how the child's arm was injured or how the child's face became bruised, that she had heard the child say, "Daddy, don't hit me," on several occasions, and that she said the child often cried when urinating.
 
 
 22
 Moreover, viewed in the light most favorable to Heuton, the record supports the existence of genuine issues of material fact regarding, inter alia: (1) whether Dunmeyer and Mobley allowed the news media to observe Heuton's apartment in an altered condition so as to falsely depict the conditions in which a child abuser would live; and (2) whether Mobley and Dunmeyer falsely reported inculpatory evidence and materially misrepresented or omitted exculpatory evidence such that they intentionally published slanderous information knowing that the statements concerning the child abuse allegations against Heuton were false. Again, therefore, I do not believe that the district court abused its discretion in denying Dunmeyer and Mobley's Motion for Summary Judgment on this issue.
 
 
 23
 SUHRHEINRICH, Circuit Judge, separate opinion.
 
 
 24
 I concur with Judge Nelson and would grant summary judgment based on qualified immunity regarding the issues of (1) whether the defendant's conduct during the search of Heuton's apartment was unreasonable; (2) whether Dunmeyer and Mobley conspired to injure Heuton's reputation by disseminating false information regarding Heuton.
 
 
 25
 I disagree with Judge Nelson on the issue of "excessive force" and would concur with Judge Jones that a genuine issue of fact exists and the motion for summary judgment based on qualified immunity for that issue should be denied. condition of the apartment had been different 18 hours before Officers Dunmeyer and Mobley arrived on the scene, but it is undisputed that others had access to the apartment in the interim -- and the proposition that Dunmeyer and Mobley rearranged anything more than a few toys strikes me as pure speculation, at best. It is worth noting that the officers were being observed by a television news reporter and his cameraman, neither of whom saw anything to suggest that the officers were trying to make the apartment look trashy.
 
 
 26
 As to the claim that Dunmeyer and Mobley conspired to disseminate false information regarding the plaintiff, it is clear that such a claim is not independently justiciable under 42 U.S.C. Sec. 1983. Paul v. Davis, 424 U.S. 693, 712 (1976).
 
 
 27
 As to the claim of excessive force, the plaintiff testified that he had the wind "halfway" knocked out of him. He was aware of no bruises on his body, he had no physical pain two or three hours after the incident, and during the routine medical screening that occurred at the time of his admission to the county jail he did not complain of any injuries or request medical assistance. Given these facts, and given that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Graham v. Connor, 490 U.S. 386, 396 (1989), I do not believe that the plaintiff can demonstrate that there was a violation of his right to be free of "unreasonable ... seizures." To defeat the motion for summary judgment, in my view, the plaintiff had to show something more than the minor altercation that occurred here.
 
 
 28
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 29
 I believe that the police officers' motion for summary judgment ought to have been granted in its entirety.
 
 
 30
 The district court evidently thought that if the officers moved objects in the plaintiff's apartment to make things look untidy, or if they brought in a bottle of baby oil to be photographed with the contents of the apartment, their conduct constituted a "search" that was "unreasonable" within the meaning of the Fourth Amendment. In this connection the district court cited Hill v. McIntyre, 884 F.2d 271, 277 (6th Cir. 1989), a case where we said, in reliance on Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir. 1979), that "the test for the entry itself and all subsequent conduct is whether these are reasonable."
 
 
 31
 The conduct at issue in Hill consisted of breaking open a front door, detaining one of the plaintiffs at gun point, conducting a search that might have been unreasonably extensive, and destroying property in the course of doing so. Nothing comparable is claimed to have occurred in the case at bar -- and it is an interesting question whether the conduct in which officers Dunmeyer and Mobley are claimed to have engaged is the sort of conduct proscribed by the Fourth Amendment. What they allegedly did might well have been actionable under state law, but there is a question whether such conduct would constitute either a "search" or a "seizure."
 
 
 32
 I intimate no view one way or the other on this question. I would not reach the question at all, because I am aware of no evidence on which a jury could properly be permitted to find that the defendant officers did anything more than place some toys on a bed so that they could be photographed more easily. There is evidence, to be sure, that the