Clifford McCORMICK, Plaintiff,

v.

CARNETT–PARTSNETT SYSTEMS, INC., Defendant.

No. 74–466–Civ–J–T.

United States District Court,
M. D. Florida,
Jacksonville Division.

June 10, 1975.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff was made a permanent, full-time employee of defendant on May 6, 1971 in a position entitled "Computer Output Quality Controller." He worked in that capacity until his re-enlistment in the United States Air Force on August 23, 1972 and served until June 1, 1973, was honorably discharged and returned to civilian life. On June 5, 1973 defendant denied his application for reemployment. (Ex. 1, ¶¶ 1, 4, 6–8) Plaintiff then turned to the Labor-Management Services Administration, an agency within the U. S. Department of Labor, for assistance. (Tr. 39)[1] After negotiations plaintiff was hired on July 23, 1973 as a "Telecommunications Operator." On October 26, 1973 defendant discharged plaintiff from all employment. (Ex. 1, ¶¶ 9, 12)

Plaintiff subsequently brought this action seeking damages and reinstatement pursuant to the Military Selective Service Act of 1967, 50 U.S.C.App. § 459. He asserts (1) that the position to which he was restored was not of "like status" to the position he held prior to military service, and (2) that his discharge was without cause or notice. Trial was held before the Court, and after careful study, and for the reasons set forth below, we reject these contentions.

Under the terms of the Act, a veteran, if still qualified to perform the duties of his former position with a private employer, has the right to be restored by his former employer to such position or to a position of like seniority, status and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. The Act further provides that the veteran so restored shall not be discharged without cause within one year after such restoration.[2]

John L. Briggs, U. S. Atty., M.D.Fla., Jacksonville, Fla., for plaintiff; Charles B. Lembcke, Asst. U. S. Atty., of counsel.

Marks, Gray, Conroy & Gibbs, Jacksonville, Fla., for defendant; George Stelljes, Jr., Jacksonville, Fla., of counsel.

---

1. The notation "Tr." followed by a number refers to the official trial transcript.

2. The Act provides, in pertinent part:
   § 459. *Separation from service*

## I. Restoration

Plaintiff herein does not concern himself with the pay of the positions ($450 a month for both) (Ex. 1, ¶¶ 2, 9) nor does he raise any issue of seniority. He contends, however, that the former position entrusted him with greater responsibility, less supervision and greater opportunity for advancement in defendant's operations.

Defendant is responsible for the inventory control of Toyota cars and parts for the southeast region of the United States. It employed about 12 people during the first period (i. e., during plaintiff's former position) and about 16 during the second period (i. e., during plaintiff's restored position). The bulk of defendant's work is done by teletype and computer. (Tr. 133, 142–143) In his work at his former position, plaintiff did the evening "poll" of Toyota dealers, that is, he would contact the dealers by teletype and pull messages through the teletype into defendant's office. He would group the messages into part orders and car sales, code them, set up the equipment to convert the paper tape to magnetic tape so the information could be processed for the computer, correct the rejects, and transmit all the information received during the evening poll to defendant's office in Pompano, Florida. At that time defendant was responsible for 60 to 70 dealers. Plaintiff worked from 5:00 p.m. to 12 midnight. (Tr. 22–26) Plaintiff's performance at his former position was considered satisfactory. (Tr. 135, 143)

The circumstances of defendant's business changed in the interim between the first period and the second. The number of dealers had increased to 130. (Tr. 133) The data processing system had been enlarged and become more sophisticated, defendant had changed its operating methods substantially, and in plaintiff's former position, approximately 80% of the duties he had once performed in that job were no longer being performed in the same manner. (Tr. 112, 115, 137, 139) For these reasons defendant did not restore plaintiff to his former position but to one which it considered comparable in responsibility and pay. (Tr. 112–114) We found convincing the proof adduced by the defense.

Plaintiff's restored position involved different hours and somewhat different duties. During the second period, as a Telecommunications Operator, he worked days, from 8:00 a. m. to 5:00 p. m. Again his job required substantial use of the teletype to contact Toyota dealers; however, he was also required to do clerical work on a regular basis, including stock control, sending out the mail and keeping the manuals current. His

*   *   *   *   *

(b) *Reemployment rights*

In the case of any such person who, in order to perform such training and service, has left or leaves a position . . . in the employ of any employer . . .

*   *   *   *   *

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer . . . to such position or to a position of like seniority, status, and pay;

*   *   *   *   *

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

(c) *Service considered as furlough or leave of absence*

(1) Any person who is restored to a position in accordance with the provisions of paragraph . . . (B) of subsection (b) . . . shall be considered as having been on furlough or leave of absence during his period of training and service . . . and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph . . . (B) of subsection (b) . . . should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

supervisors were four in number, rather than only one, as in the first period. (Tr. 52–56)

In our consideration of this issue, plaintiff urges that we examine the totality of the circumstances: the work responsibility and status, general working conditions, job location, shift assignment and rank in the corporate structure. See Monday v. Adams Packing Assoc. Inc., 74 CCH Labor Cases ¶ 14,263 (M.D.Fla.1973). More specifically, plaintiff argues that the restored position involved significantly less responsibility, closer supervision, change in the nature of duties, and little, if any, opportunity for advancement.

We note at the outset that assignment of an employee to a different shift does not, by itself, constitute a change in status. Grubbs v. Ingalls Iron Works Co., 66 F.Supp. 550 (N.D.Ala.1946), involved an employer who had the right to assign employees of the veteran's classification to day or night shift at will; Boone v. Fort Worth & Denver Ry. Co., 223 F.2d 766 (5th Cir. 1955), involved a returning veteran who could not have been displaced from his shift had he not entered the service. In both cases the veteran was seeking assignment from the night shift to the day shift, but the principle was the same: the returning veteran has not been given an inferior position where the only difference was the hours worked.

■ The question before us, then, is whether the other differences between plaintiff's former and restored positions constitute a change in status. Bova v. General Mills, Inc., 173 F.2d 138 (6th Cir. 1949), an influential case, discussed this point at length. There the veteran/employee argued that the Act

gives the option not to the employer, but to the employee to select the job to which he is to be restored. He [the veteran] claims that the employer has no alternative, if the original position exists, but to displace the person holding it at the time the veteran demands reemployment, and to give it to the veteran. He urges that the employer's alternative right to offer an equivalent position arises only when the original position has ceased to exist or is changed. This contention ignores the plain terms of the statute. The clearly expressed intention of the Congress is two-fold: First, to protect the veteran by insuring him reemployment, and second, to give the employer leeway in adjusting to the dislocations caused by the departure of men in great numbers to fill the armed services. It therefore included in the statute an alternative provision, permitting the employer in accordance with the dictates of sound management, to give the veteran not the identical position, but one of 'like seniority, status, and pay,' that is, similar employment. 173 F.2d at 140.

This approach has been adopted by other Circuits as well, including the Second, Major v. Phillips-Jones Corp., 192 F.2d 186, 188 (1951); the Fifth, Boone v. Fort Worth & Denver Ry. Co., supra; and the Seventh, Schwetzler v. Midwest Dairy Products Corp., 174 F.2d 612, 613 (1949).

■ Applying this rule, although plaintiff's restored position did involve somewhat different duties, it nevertheless was not inferior to his former position. In both positions plaintiff's essential and primary function was as a teletype operator. (Tr. 150, 200) While we point out later that the testimony of plaintiff was not convincing, it might be mentioned here that even he admitted this, and conceded that in his restored position half his time was devoted to teletype duties. (Tr. 47, 56, 74)

Plaintiff had done clerical work frequently in the first period (Tr. 135, 150–152, 192), and defendant's operation during both periods was such that everyone, including management, did clerical work as the need arose. (Tr. 172–173, 191–192, 205) In fact, much of the clerical work to which plaintiff now ob-

jects was done during the first period by his superiors. (Tr. 204–205)

Plaintiff complains of close supervision during the second period. First, we note that we have found no case that so much as suggests that close supervision is such a change in status as contemplated by Congress. Secondly, plaintiff was subject to more supervision not because he required more supervision but because he was working in the daytime, the period when most of defendant's business is conducted and when more people, including his superiors, were around. (Tr. 153–154, 204) A time did come when plaintiff was required to keep daily time sheets; by this point, however, his work rate had slowed considerably, a factor which prompted defendant to determine how he was spending his time. (Tr. 225–226) The record contains nothing to suggest that defendant was supervising plaintiff in particular more closely or that its standards had changed. If one does his job, what matters the amount of supervision?

Finally, during the second period plaintiff had far *more* opportunity for advancement because he had more contact with various phases of defendant's operation. (Tr. 204–205, 211) A witness (Edward Machek) for defendant testified emphatically that had plaintiff "knuckled down to work" he probably would have been promoted to the position of his immediate superior, as Data Control Supervisor. (Tr. 214–215)

In sum, we were unimpressed by the totality of the outcry of his alleged grievances. To paraphrase Shakespeare, plaintiff "doth protest too much, methinks." For all these reasons, therefore, we hold that plaintiff's restored position was of like status as his former position.

## II. Discharge

■■ Plaintiff argues further that his discharge was without cause or notice thereby violating the Act. Where a veteran is reemployed by his former employer and is discharged within one year following his reinstatement, the burden is on the employer to prove that the veteran was discharged for cause. Carter v. United States, 132 U.S.App. D.C., 303, 407 F.2d 1238, 1242 (1968). In *Carter* the Court went on to say that

a discharge may be upheld as one for 'cause' only if it meets two criteria of reasonableness: one, that it is reasonable to discharge employees because of certain conduct, and the other, that the employee had fair notice, express or fairly implied, that such conduct would be ground for discharge. *Id.* at 1244.

It has also been said that,

[t]he cause intended by the statute does not have to be a legal cause. It may be such cause as a fair-minded person may act upon, and where such action is not arbitrarily taken with a purpose or as an excuse to avoid the statute, it is cause within the meaning thereof.

Keserich v. Carnegie-Illinois Steel Corp., 163 F.2d 889, 890 (7th Cir. 1947); Fries v. Pennsylvania R. Co., 195 F.2d 445, 448 (7th Cir. 1952). Bearing these standards in mind, we hold that defendant has demonstrated that plaintiff's discharge was for cause and that he had fair notice.

Plaintiff argues that his discharge was due to "friction" and "animosity" between himself and defendant prompted by his assertion of his rights under the statute. Plaintiff, however, was a singularly unconvincing witness, and we reject these contentions. The record makes it quite clear that defendant made every efffort to accommodate and cooperate with plaintiff. (Tr. 117–118, 182, 200–201) We accept *in toto* the testimony of defendant's witnesses that plaintiff's disharge was due to such work-related misconduct as:

—excessive absenteeism; in less than three months of employment plaintiff missed over $2\frac{1}{3}$ weeks; in a letter to the Department of Labor, defendant commented on this succinctly:

"it is near impossible to conduct a business with an employee who, due to his health or otherwise, can not be counted on to appear for work" (Exs. 6 and B, Tr. 117);

—an extraordinary amount of time spent in the bathroom, averaging an hour daily (Tr. 155, 221);

—frequent telephone calls of a personal nature from girl friends, no less than two or three times daily (Tr. 188–190);

—clearly improper clothing (Tr. 144);

—seemingly deliberate slowness in performing his tasks and an inability to learn new ones (Tr. 186–187, 220, 228–231);

—and, in general, an arrogant and haughty attitude (which we observed even during his testimony at trial) and an overall unwillingness to cooperate for the good of the business (Tr. 155–156, 179–180, 188); as one witness accurately characterized it, plaintiff returned to defendant's employ "with a chip on his shoulder." (Tr. 182)

■ This was certainly not a case of discrimination against a veteran for exercising his legal rights, nor of a company trying to do indirectly what it could not do directly. Plaintiff seems to have assumed that the right to reinstatement is a guarantee that any behavior on the job must be tolerated. (Tr. 155–156, 180) This is obviously not the case; the protection of the statute is based upon the veteran's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of duty of all employees. Manowitz v. Einhorn Wholesale Grocery, 68 F.Supp. 907, 908 (E.D.N.Y.1946). The persistency with which he maintained a mean and nasty attitude towards co-workers, coupled with a faulty and limpid performance of duty, made the relationship there quite unbearable and eventually impossible. Plaintiff's discharge was clearly justified.

■ All that remains is the question of notice. In Carter, supra, the Court explicitly held that the notice to the discharged employee need not be express:

The ultimate issue . . . is whether the conduct was or should have been known to the employee to be prohibited by the employer. That knowledge may, of course, rest on fair implication, even though not made express, as in the kind of job-related misbehavior that is inconsistent with proper attention to work or proper loyalty to the employment relationship. 407 F.2d at 1246.

Plaintiff's failings clearly fall within the scope of "job-related misbehavior." In any event, while the details of his shortcomings may not have been elaborated upon, certainly the message that plaintiff was performing unsatisfactorily was expressed to him on several occasions by various people. (Tr. 155–157, 175–178, 229–231) Defendant even went so far as to set up an interview for him with an employment agency to assist him in looking for another job. (Tr. 58) Under these conditions the requirement of notice to plaintiff was met.

Accordingly, after careful consideration of all the facts and circumstances present here, we are constrained to, and do, deny plaintiff's application in all respects. Judgment shall be entered for defendant. This opinion shall constitute our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

So ordered.