Richard R. BURKART, Plaintiff–Appellant,

v.

POST–BROWNING, INC., Defendant–Appellee.

No. 87–3403.

United States Court of Appeals, Sixth Circuit.

Submitted May 13, 1988.

Decided Oct. 20, 1988.

Richard Burkart, Hamilton, Ohio, pro se.

Jay Hill, Swain & Hardin, Cincinnati, for defendant-appellee.

Before ENGEL, Chief Judge, and KEITH and RYAN, Circuit Judges.

ENGEL, Chief Judge.

Plaintiff Richard Burkart appeals a summary judgment of the district court in favor of defendant Post–Browning in Burkart's suit for damages for unlawful termination of his employment brought pursuant to section 404(a) of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021(a). After a review of the record and careful consideration of the applicable provisions of the Veteran's Act, we affirm the court's finding that Burkart's notice to his employer of pending voluntary leave was inadequate and that he was not discharged in violation of that Act.

I.

In 1983 Burkart was an employee of Post–Browning. During his employment, he also served as a National Guardsman. While on National Guard duty for two weeks in June, Burkart was offered the opportunity to volunteer for additional duty to commence on July 9, 1983. Although he returned to work July 5 with the hope of accepting the volunteer position, he did not formally notify the military unit that he would be attending the camp until July 7 and did not notify his employer until 4:45 p.m. the following day on Friday, July 8. This delayed notice gave the employer only fifteen minutes to prepare for Burkart's pending three week absence. Based largely on his inadequate notice, Post–Browning terminated Burkart. Burkart was notified of his termination upon his return to work three weeks later, on August 1.

Burkart first filed a complaint in the Butler City Common Pleas Court seeking unemployment benefits for the period following his termination from Post–Browning. His claim was denied based on his failure to comply with Ohio Rev.Code Ann. § 5903.061, which requires employees to provide their employers with at least sixty days notice before taking leave. Burkart did not appeal this judgment, but subsequently filed a complaint with the United

States District Court for the Southern District of Ohio alleging that he was unlawfully discharged under 38 U.S.C. § 2021(a) of the Vietnam Era Veterans' Readjustment Assistance Act. The magistrate, hearing the case with the consent of both parties, granted Post–Browning's motion for summary judgment. The primary issues raised on appeal concern whether inadequate notice of pending duty is a valid basis for discharge of a member of the reserve armed forces and, if so, whether Burkart's notice was inadequate.

## II.

In passing section 404(a) of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.*, Congress spoke at great length about its desire to protect the reservist from prejudice resulting from his periodic duty. This congressional intent is evident in the plain language of the statute: "Any person who seeks or holds a position [with the reserve Armed Forces] ... shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." 38 U.S.C. § 2021(b)(3). The Supreme Court has also recognized this legislative purpose: "The legislative history ... indicates that § 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated solely by reserve status." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 2516, 69 L.Ed. 2d 226 (1981).

■ Despite Congress' clear intent to protect reservists from unnecessary discrimination arising from military duties, however, nothing in the legislative history or the case law indicates that a reservist is to be immunized indiscriminately from all responsibility to his employer. Section 2024(d), for example, requires that a reservist give at least some notice to the employer before going on military duty: "Any employee [in the reserve component of the Armed Forces] ... shall *upon request* be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States" (emphasis added). Although this statutory provision makes no mention of the required adequacy of the notice, it is apparent from the language of the statute that at least some notice by the serviceman is implicit in its command that leave be given "upon request." [1] The necessity of giving notice has been recognized by other courts as well. For example, in *Blackmon v. Observer Transportation Co.*, 102 Lab.Cas. (CCH) ¶ 11,450 at 23,913 (W.D.N.C., Oct. 28, 1982) [available on WESTLAW, 1982 WL 805], the court found that the "[p]laintiff was discharged not because of his military service and obligations, but because of his failure to request a leave of absence from his employer, a statutory requirement which must be met to entitle an employee to the reinstatement rights afforded by the statute."

On appeal, Burkart appears to recognize this requirement that some notice be given, but nevertheless argues that the absence of any statutory language defining the adequacy of such notice compels the conclusion that any notice, however momentary, is adequate. If section 2024(d) were viewed in isolation from the remainder of the Veteran's Act, we might be tempted to join in Burkart's reading of section 2024(d). However, other provisions of that same statute make it clear that a reservist is not immune from termination. Section 2021(b)(1) provides employers with the discretion to terminate an employee for cause: "Any person who is restored to or employed in a position [with a private employer] ... shall not be discharged from such

---

1. Our conclusion that it is the employee's duty to minimize inconvenience to the employer is further supported by the detailed restrictions on the length of travel for leave set forth in the statute. *See, e.g.,* 38 U.S.C. § 2024(d). Clearly, Congress wanted to prevent a reservist from being discriminated against without providing the reservist with unnecessary power to abuse that protection.

position *without cause* within one year after such restoration or reemployment." 38 U.S.C. § 2021(b)(1) (emphasis added). In *Carter v. United States*, 407 F.2d 1238 (D.C.Cir.1968), the D.C. Circuit provided a thorough analysis of section 2021(b)(1): "We think a discharge may be upheld as one for 'cause' only if it meets two criteria of reasonableness: one, that it is reasonable to discharge employees because of certain conduct, and the other, that the employee had fair notice, express or fairly implied, that such conduct would be ground for discharge." *Id.* at 1244. More recently, in *Anthony v. Basic American Foods, Inc.*, 600 F.Supp. 352, 355 (N.D.Cal.1984), the district court for the Northern District of California set forth slightly different factors in considering the more specific question of whether a notice is adequate: "[T]he plaintiff's leave request should be evaluated according to whether it was reasonable both in light of 1) the circumstances giving rise to the request and 2) the requirements of the employer."

■ Under either set of factors, however, we read section 2021(b)(1) as allowing an employer to terminate a reservist for "cause" when, as found here, the reservist deliberately disregards the needs of the employer by giving only fifteen minutes notice prior to an imminent three-week leave, particularly when such short notice could easily have been avoided. As the district court stated in *McCormick v. Carnett–Partsnett Systems, Inc.*, 396 F.Supp. 251 (M.D.Fla.1975):

> This was certainly not a case of discrimination against a veteran for exercising his legal rights, nor of a company trying to do indirectly what it could not do directly. Plaintiff seems to have assumed that the right to reinstatement is a guarantee that any behavior on the job must be tolerated. This is obviously not the case; the protection of the statute is based upon the veteran's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of duty of all employees.

*Id.* at 256 (citations omitted). In such a case it is not the employee's ties with the armed services which led to his discharge. Rather, the cause of the employee's discharge is his own intentional failure to act responsibly in reporting and informing the employer of his future obligations, regardless of whether these obligations were related to military duty or some other personal need. "If a non-reserve employee in [the employee's] position would be terminated for the same conduct, [the employee's] reserve status cannot insulate him. If, on the other hand, a non-reserve employee would not be terminated for the same conduct, it becomes obvious that the reasons given for termination were pretextual." *Sawyer v. Swift & Co.*, 836 F.2d 1257, 1261 (10th Cir.1988). Burkart's reckless behavior in failing to notify Post–Browning of his pending military leave is thus the direct cause of his subsequent termination, having no relation to the fact that he chose to take the leave.

With regard to the judicially created requirement that the employer give sufficient notice of termination to a reservist, the court in *Carter* specifically withheld requiring that the notice be express:

> The ultimate issue here, which is interwoven with such questions of fact, is whether the conduct was or should have been known to the employee to be prohibited by the employer.
>
> That knowledge may, of course, rest on fair implication, even though not made express, as in the kind of job-related misbehavior that is inconsistent with proper attention to work or proper loyalty to the employment relationship.

*Carter*, 407 F.2d at 1246 (footnotes omitted). In the context of the record here, fifteen minutes notice of a three week leave was so blatantly detrimental to his employer that Burkart had to know it would trigger his employer's subsequent decision to demote or even to terminate him. By his own testimony Burkart himself plainly recognized the inevitability of his discharge. As he stated in his deposition: "After I told them about the opportunity of going to the other camp, I told them that maybe they should go ahead and lay me off.... I felt that with the two big incidents in mind that this was the way

that the company was going to operate, you know, that this was their opportunity to get rid of me if they so choose [sic]." Our conclusion here is further supported by the decisions of other courts. The Fifth Circuit has stated:

Congress, in amending the Act, intended to prevent discrimination in employment as a result of a reservist's military obligation but it did not intend thereby to endow a reservist with unreasonable powers over his employer or cause his employer unreasonable hardship. The training period for which leave of absence is given must be reasonable both in the context of the reservist's military obligation and the requirements of the employer.

*Lee v. City of Pensacola,* 634 F.2d 886, 888 (5th Cir.1981). Although the analysis of some courts is somewhat different insofar as they base their findings of inadequate notice under section 2024(d), *see Sawyer,* 836 F.2d at 1260 & n. 2 (and cases cited therein), our ultimate conclusion that adequate notice is required under the Veterans' Act is identical.

■ It is further disputed whether a finding of inadequate notice is a conclusion of law or a finding of fact. As the previous analysis demonstrates, the statute and legislative history provide no guidance for this inquiry since there are no statutory criteria defining what constitutes "adequate" notice. In the absence of statutory standards, "adequate notice" becomes a judicially created basis for "cause" under section 2021(b)(1), and we must turn to our circuit's law on the more general question whether the adequacy of notice is a question of law or fact.

Although the district court indicated that its determination of the adequacy of Burkart's notice was a conclusion of law, we do not find support for this position in our court's past consideration of the question. The case law indicates that adequacy of notice is consistently regarded as a finding of mixed fact and law.[2] As a panel of our court stated in *K & M Joint Venture v. Smith International, Inc.,* 669 F.2d 1106, 1111–12 (6th Cir.1982), "We agree that the question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact. However, the question of whether the notice satisfied the statutory requirement is one of law. Thus, the issue of notice in this case presents a mixed question of fact and law."

The standard for summary judgment for questions of mixed fact and law is identical to that for findings of fact. Thus, summary judgment may not be granted unless there are no remaining material facts in dispute when the evidence is construed most favorably to the nonmoving party. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1232 (6th Cir.1981); *Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142, 1146 & n. 7 (6th Cir.1975). Additionally, on appeal a "de novo" review is required both of a district court's grant of summary judgment and of a district court's findings of mixed law and fact, even when these findings are not made on a summary judgment motion. *Cordovan Associates, Inc. v. Dayton Rubber Co.,* 290 F.2d 858, 860 (6th Cir.1961); *see also United States v. Weingarden,* 473 F.2d 454, 460–61 (6th Cir.1973).

**2.** In contrast, the only other circuit that appears to have considered this question determined that the adequacy of a reservist's notice is a conclusion of law. *Sawyer,* 836 F.2d at 1260. Although the Tenth Circuit did not set forth the basis for this holding, we attribute it either to that court's reliance on section 2024(d) for its conclusion that adequate notice is required, or on the case law within that circuit regarding the more general issue of whether the adequacy of notice is a question of fact or of law.

In contrast, the D.C. Circuit indicated that a general, "for cause" basis for dismissing a reservist was a finding of fact:

Behavior that is immoral can be 'cause' for discharge. Veterans must conform to the 'ordinarily expected standards of personal conduct.' The question as to the content of 'ordinarily expected standards' of conduct is of a kind normally left to the trier of fact, and is one on which evidence may rightly be tendered. The ultimate issue here, which is interwoven with such questions of fact, is whether the conduct was or should have been known to the employee to be prohibited by the employer.

*Carter,* 407 F.2d at 1246 (footnotes omitted).

Upon our careful review of the record and in the context of the undisputed facts before the trial judge, it is apparent to us that no reasonable fact finder could conclude other than that Burkart deliberately knew his notice was too short and would be so viewed by his employer, and that Burkart thereby sought to trigger his own discharge so that he could not only go on military duty but also return, not to his job, but to unemployment compensation. The facts leading to Burkart's discharge are not in dispute. It is uncontested that at some time between June 9 and July 3, 1983, Burkart was extended an offer to attend an additional voluntary three-week camp to be held from July 9 through July 30, 1983; that Burkart attempted to set up a meeting regarding his additional duty with Post following his return on July 5, 1983, but was unable to get an appointment until Friday, July 8 at 4:30; that Burkart could have given notice of his intention to take additional leave to his supervisor but instead insisted upon waiting to discuss the matter with Post because he allegedly did not trust his supervisor; that Burkart accepted the voluntary assignment on Thursday, July 7, although he had not yet discussed the matter with any of his superiors at Post–Browning; and that upon Burkart's return on August 1 he was notified that his employment with the defendant was terminated. The only preliminary fact arguably in dispute, the quality of Burkart's work prior to his termination, is not directly relevant to this case since terminating an employee for inadequate work is a valid "cause" for termination under section 2021(b)(1).[3] *See Clayton v. Blachowske Truck Lines, Inc.*, 815 F.2d 1203, 1205 (8th Cir.1987); *Henry v. Anderson County, Tennessee Office of the Sheriff*, 522 F.Supp. 1112, 1115 (E.D.Tenn.1981).

In response to the obvious conclusion that his notice was inadequate, Burkart now argues that his delay until Friday at 4:45 was not his fault but was caused by Post's inability to see him earlier in the week. This claim, simply put, is incredible. Burkart could easily have protected his employer simply by giving notice to other officials in the company. While Burkart contends that he could not discuss the matter, even initially, with his supervisor because he did not trust him, his subjective dislike or distrust of his supervisor is no justification for his failure to notify any of his superiors of his decision to seek leave.

In summary, the record reveals no genuine dispute of the following finding made by the magistrate:

The plaintiff's decision to leave on National Guard duty and the defendant's decision to terminate the plaintiff's employment took place in the context of a somewhat contentious employment relationship and actual notice took place after a generally unfavorable performance review with the prospect of an unattractive transfer. There was simply no excuse for not keeping defendant informed of the National Guard duty through plaintiff's supervisor, Mr. Aston, or in casual conversation with Mr. Post, since plaintiff saw him frequently during the day. A note or any other means designed to give prompt notice would also have been effective.

*Burkart v. Post–Browning, Inc.*, No. C–1–85–1618, slip op. at 4–5 (S.D.Ohio Jan. 27, 1987). We conclude that Burkart's notice was inadequate since there were sufficient options available for him to give adequate notice. The record is convincing that it was Burkart, not his employer, who used his military duty as a pretext to mask his real desire to terminate his employment with Post–Browning. The Veterans' Act was drafted with the intent to shield a serviceman from discrimination by his employer, not to arm him with a sword to punish his employer for some perceived wrong unconnected to his status.

In light of our conclusion that Burkart's notice was inadequate we need not determine whether his case is barred by princi-

---

**3.** Specifically, Post–Browning argues that Burkart's work was inadequate, but rather than firing Burkart they intended to transfer his services. Thus, they indicate that had Burkart's work been satisfactory, he probably would not have been terminated, regardless of his inadequate notice. In contrast, Burkart alleges that his work was at least satisfactory.

ples of collateral estoppel arising from the common pleas court's determination denying his claim for unemployment benefits. Whether we are bound by that court's conclusions or not, we are bound as a matter of simple reality to agree that "the employer's interests were damaged by the appellant's willful, knowing misconduct and failure to give notice."

The judgment of the district court is therefore AFFIRMED.