Alexander KITSAKOS, Plaintiff,

v.

Lee P. BROWN, as Police Commissioner of the City of New York, the New York City Police Department, Douglas H. White, as City Personnel Director, the New York City Department of Personnel, and the City of New York, Defendants.

No. 92 Civ. 8143 (AGS).

United States District Court, S.D. New York.

March 16, 1994.

Lysaght, Lysaght & Kramer, P.C., Lake Success, NY, for plaintiff.

Corporation Counsel, Law Dept., New York City, for defendants.

## AMENDED [1] MEMORANDUM OPINION AND ORDER

SCHWARTZ, District Judge.

Plaintiff, a probationary New York City police officer, alleges that upon his return from military duty he was unlawfully terminated from his position in violation of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021, 2022, and 2024 [2] (1988 & Supp. IV 1992), as well as § 243 of the Military Law of New York State. N.Y. Military Law § 243(5) (McKinney 1990). By this action he seeks reinstatement to his previous position and back pay. Defendants move for an order granting summary judgment on the grounds that plaintiff was terminated for lawful reasons unrelated to his military service, and plaintiff cross-moves for summary judgment.

## I. FACTS

The following are facts not in dispute. On April 25, 1990, plaintiff was designated to serve a twenty-four month probationary period as a police officer with the New York City Police Department.[3] During the probationary period, plaintiff was the subject of numerous disciplinary violations [4] and was

---

1. This memorandum, opinion and order has been amended to correct a typographical error: in the 10th line from the bottom of page 5, "Defendants contend" has been changed to "Plaintiff contends".

2. In 1992, sections 2021, 2022, and 2024 of Title 38 of the United States Code were renumbered 4301, 4302 and 4304 respectively. *See* Pub.L. No. 102–568, title V., § 506(b), 106 Stat. 4340 (1992).

3. As a probationary officer, plaintiff was required to attend training classes at the Police Academy until October 12, 1990.

4. The list of disciplinary violations included eleven negative Student Training Activity Reports ("STAR cards") and four Command Disciplines. Negative STAR cards are issued for violations of the Police Academy's rules and regulations and Command Disciplines are issued for violations of the Departmental rules and regulations, including the accumulations of negative STAR cards.

eventually placed on "disciplinary hold pending termination". The well-documented list of violations includes, *inter alia*, tardiness, copying homework assignments and making improper entries in his activity log and on his daily attendance forms. Plaintiff was placed on disciplinary probation on June 26, 1990 and advised to attend a disciplinary probation hearing, where he was counseled on his poor conduct and disciplinary record. Plaintiff's overall performance evaluation was "well below standards".

Furthermore, plaintiff did not contest certain statements made by defendants in accordance with local Civil Rule 3(g). For example, plaintiff did not contest that a majority of his classmates described his performance as unsatisfactory and that four of plaintiff's classmates stated that they would not trust him with a gun and that his statements concerning guns made them nervous. Additionally, plaintiff did not contest that on October 15, 1990, Robert F. Burke, Deputy Chief of the Police Academy, recommended that plaintiff be terminated and that he not be considered for employment in the New York City Police Department in the future.

On November 22, 1990, plaintiff, a reservist in the United States Marine Corps since February 1989, was informed by telephone that his Marine Reserve unit would be called to active duty. Two days later, plaintiff received written orders to report for active duty on December 1, 1990. On November 26, 1990, plaintiff notified an administrative supervisor at the Police Academy of his orders.[5] On November 30, 1990, the New York City Police Department unsuccessfully attempted to serve plaintiff with termination papers. According to a report by Sergeant Joel J. Krieger, entitled "Charges and Specifications", plaintiff avoided the service of termination papers by reporting sick and then refusing to remain at a location when ordered to do so, and by failing to comply with subsequent orders by ranking officers of the Police Academy to report to the Health Services Division.

On December 1, 1990, plaintiff reported for active duty with the United States Marine Corps. He remained on active duty until November 5, 1991. During plaintiff's military service, the Police Department recorded his status as "military leave". Plaintiff was paid for the months of December 1990 and January 1991 pursuant to the Collective Bargaining Contract between the City of New York and the Police Benevolent Association of New York. On November 14, 1991, plaintiff sought re-employment with the New York City Police Department and was informed that his employment had been terminated on November 6, 1991.

## II. DISCUSSION

■ To grant a motion for summary judgment the Court must be persuaded that there are no "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To be an issue for trial there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

### Federal Claim

■ There is no dispute that plaintiff falls within the class entitled to the protection of the Vietnam Era Veterans' Readjustment Assistance Act of 1974. The relevant section provides that "any person who seeks or holds a position [with a reserve unit of the Armed Forces] shall not be denied hiring, retention in employment, or other incident or advantage of employment *because of* any obligation as a member of a Reserve component of the Armed forces" 38 U.S.C. § 2021(b)(3) (emphasis supplied). The purpose of this provision is to protect reservists against employment discrimination motivated solely by their reserve duties. *See Monroe v. Standard Oil Co.*, 452 U.S. 549, 558, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981). If the

5. On November 28, 1990, plaintiff provided the Police Department with the written order and handed in his I.D. card and safety helmet. He also completed all the necessary paperwork for military leave.

termination is motivated not by the reservist's military duty but by some other reason, the reservist is not entitled to benefit from this section. *See Burkart v. Post–Browning, Inc.,* 859 F.2d 1245, 1247 (6th Cir.1988).

 The uncontroverted evidence before this Court indicates that plaintiff was repeatedly disciplined, was placed on "disciplinary hold pending termination" and was recommended for termination a full month before he notified the Police Department of his order to report for active duty. Moreover, it indicates that the only reason he was not terminated prior to military service was the inability of the Police Department to serve notice.

 Plaintiff contends that there is a question of fact concerning the motivation of the termination decision because the Notice of Termination was made several days after plaintiff informed the Police Department of his order to report for active military duty. By itself, the timing of termination in relation to military service does not create an inference of discrimination under the Act sufficient to defeat a motion for summary judgment. *See Burkart v. Post–Browning, Inc.,* 859 F.2d 1245, 1248–50 (6th Cir.1988). Further, there is no other evidence to support plaintiff's position that he was terminated as a result of his military leave.

### State Claim

 Plaintiff also alleges his termination violated § 243 of the Military Law of New York State. N.Y. Military Law § 243(5) (McKinney 1990). This statute provides that a public employee who leaves for military duty "shall not be prejudiced in any way with reference to promotion, transfer, reinstatement or continuance in office." Although section 243 does not expressly provide that the prejudice must result from a military absence, this precondition clearly is implied in the statute. A statute from which section 243 is derived was interpreted to apply only where employment would not have been terminated by any intervening cause apart from absence due to military duty. *See* Op. N.Y.Atty.Gen. 145, 148 (1943). Regardless of any changes in the language of the statute since the time of this Attorney General's

opinion, the condition that the prejudice must result from military absence is clearly implied in the current statute. Since the uncontroverted record reflects that plaintiff was terminated because of his poor disciplinary record and not as a result of his military duty, plaintiff's claim under section 243 must fall. Accordingly, defendants' motion for summary judgment is granted and plaintiff's cross motion is denied.

The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**