24 F.3d 246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Steven D. FRIEND, Plaintiff-Appellant,
v.
UNITED TECHNOLOGIES/HAMILTON STANDARD; Eileen Brooks; John
Kelliher, Defendants-Appellees.
 No. 92-55864.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 4, 1994.*
Decided April 21, 1994.
 
 Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Steven D. Friend appeals pro se from the district court's order granting summary judgment in favor of United Technologies/Hamilton Standard ("UT/HS") in his action alleging violation of the Veterans Reemployment Rights Act, 38 U.S.C. Sec. 2024, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy under California law.
 
 
 3
 The district court had jurisdiction pursuant to the Veterans Reemployment Rights Act, 38 U.S.C. Sec. 2024. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and we affirm.
 
 I.
 
 4
 Friend argues that UT/HS's failure to reemploy him after he returned from military training leave and his subsequent termination violate the Veterans Reemployment Rights Act ("The Act"). Section 2024(d) states in relevant part:
 
 
 5
 Any employee not covered by subsection (c) or this section who holds a position described in clause (A) or (B) of section 2021(a) shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's discharge from a period of such active duty for training or inactive duty training, ... such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.
 
 
 6
 Section 2021(b)(3), which is closely related to section 2024(d), states "Any person who seeks or holds a position [with the reserve Armed Forces] ... shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."[1]
 
 
 7
 The purpose behind the Act is "to protect the reservist from prejudice resulting from his periodic duty". Burkart v. Post-Browning, Inc., 859 F.2d 1245, 1247 (6th Cir.1988). See also Monroe v. Standard Oil Co., 452 U.S. 549, 559 (1981) ("The legislative history ... indicates that Sec. 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated solely by reserve status."). "The Veterans' Act was drafted with the intent to shield a serviceman from discrimination by his employer, not to arm him with a sword to punish his employer for some perceived wrong unconnected to his status." Burkart, 859 F.2d at 1250. Here, the district court's grant of summary judgment was proper because Friend's lack of reemployment and subsequent termination was not based on his military status. UT/HS argues that Friend was terminated for insubordination and failure to carry out reasonable orders of management representatives with regard to medical evaluations to determine fitness for work, and unauthorized possession of a recording device on company premises. The record indicates that these stated reasons were not pretextual.[2]
 
 
 8
 Prior to Friend's military leave, his medical ability to work was legitimately placed in question by the stress caused by his involvement in a sexual harassment charge. Friend admitted as much in a letter to Manager of Personnel Resources Eileen Brooks dated May 11, 1990, which stated that the sexual harassment complaint "has brought extreme emotional distress that has affected my work performance, my concentration and my personal life.... It has caused my behavior to become uncomely." Friend stated in another letter to Brooks on May 14 that his accuser had "done substantial damage to [his] emotional stability" and had caused him "great stress and emotional hurt".
 
 
 9
 On June 1, prior to Friend's vacation/military leave, he was told that a medical examination, conducted by company contract physician Dr. Hurtubise, would be required prior to his being able to return to work. No one involved in this decision was aware that Friend was planning to take military leave. Dr. Hurtubise met with Friend twice, but refused to give him medical clearance to return to work. This refusal was based on: 1) Friend's refusal to provide necessary medical information;[3] 2) Friend's attitude, which "appeared to be slightly morose, ultra serious, bordering on belligerent; and 3) Friend's extremely high stress level.[4] There is no evidence that UT/HS's request that Friend secure medical clearance before returning to work, or Dr. Hurtubise's refusal to provide such clearance, was related to Friend's military status.
 
 
 10
 Another stated ground for Friend's dismissal was his surreptitious taping of conversations between management personnel, employee assistance personnel and himself in an attempt to resolve the sexual harassment charge. Friend admits that he told a corporate ombudsman that he had secretly tape recorded certain closed door meetings with management. While Friend implies that his statement to the ombudsman was an attempt to dissuade management from lying, he offers no evidence that this ground for dismissal was related to his military status. Friend has failed to demonstrate either a connection between his non-reemployment and termination and his participation in annual military training or that UT/HS's stated grounds for termination were pretextual. Therefore, we affirm the district court's grant of summary judgment in favor of UT/HS on Friend's claim for violation of the Act.[5] See Burkart, 859 F.2d at 1250; Sawyer v. Swift & Co., 836 F.2d 1257, 1262 (10th Cir.1988) (employee's termination did not violate section 2021 because there were sufficient other, non-pretextual reasons not related to his military status); Clayton, 640 F.Supp. at 174.
 
 II.
 
 11
 Friend asserts that he raised issues of fact as to whether an implied in fact employment contract and an implied covenant of good faith and fair dealing existed and were breached. California law presumes that employment may be terminated at the will of either party. See Cal.Lab.Code Sec. 2922. However, the presumption may be superseded by the existence of an implied agreement that employment will not be terminated except for good cause. See Pugh v. See's Candies, Inc., 171 Cal.Rptr. 917, 924-28 (1981). All contracts impose upon each party a duty of good faith and fair dealing in its performance and enforcement. See Foley v. Interactive Data Corp., 254 Cal.Rptr. 211, 227 (Cal.1988). "[A] breach of the implied covenant of good faith and fair dealing in employment contracts is established whenever the employer engages in 'bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights.' " Kohler v. Ericsson, Inc., 847 F.2d 499, 501 (9th Cir.1988) (citations omitted).
 
 
 12
 Friend argues that a contract to terminate only for cause existed on the basis of the following: 1) policy and procedure statements published by UT/HS; 2) alleged assurances of continued employment made by Eileen Brooks during the interviewing process; and 3) Friend's dismissal letter contained a detailed explanation of the reasons for his termination, thus allegedly acknowledging that some cause for the action was necessary. Upon reviewing the record, we find these reasons insufficient to overcome the statutory presumption that Friend was an at will employee who could quit or be terminated at any time for any reason pursuant to an oral contract of indefinite length.[6]
 
 
 13
 California law clearly states that the implied covenant of good faith and fair dealing cannot be invoked to prevent a court from enforcing the terms of an at will employment contract. See Foley, 254 Cal.Rptr. at 238 n. 39; DeHorney v. Bank of America Nat'l Trust and Savings Assn., 879 F.2d 459, 466 (9th Cir.1989). Therefore, we affirm the district court's grant of summary judgment in favor of UT/HS on Friend's breach of the implied covenant of good faith and fair dealing claim.[7]
 
 III.
 
 14
 Friend argues that he was wrongfully terminated for refusing to file an allegedly fraudulent claim for disability in violation of public policy. California recognizes a cause of action for wrongful discharge in violation of public policy that is "substantial", "fundamental", and "firmly established". See Foley v. Interactive Data Corp., 254 Cal.Rptr. at 218 n. 11 ("[C]ourts in wrongful discharge actions may not declare public policy without a basis in either the constitution or statutory provisions." Gantt v. Sentry Ins., 4 Cal.Rptr.2d 874, 881 (Cal.1992). Furthermore, the discharge must affect "a duty that inures to the benefit of the public at large rather than to a particular employer or employee." Foley, 254 Cal.Rptr. at 217.
 
 
 15
 Friend correctly asserts that terminating an employee who refuses to break the law may violate public policy. See Gantt, 4 Cal.Rptr.2d at 878; Tameny v. Atlantic Richfield Co., 164 Cal.Rptr. 839, 841-43 (Cal.1980). Here, however, Friend's argument fails because there has not been a violation of fundamental public policy. UT/HS did not require or anticipate that Friend would engage in fraudulent conduct in connection with the medical disability forms. UT/HS placed Friend on medical disability because Dr. Hurtubise refused to provide him with a release to return to work. As discussed earlier, Dr. Hurtubise's refusal to provide the release was not pretextual. Given that Friend did not obtain an adequate work release, providing him with medical disability forms so he could be compensated if a physician found him disabled is not tantamount to forcing him to file a fraudulent disability claim. In fact, UT/HS informed Friend that he could complete the disability forms as he felt appropriate. UT/HS did not violate any fundamental public policy and therefore we affirm the district court's grant of summary judgment on Friend's breach of public policy claim.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Friend argues that section 2021 and the cases discussing it are irrelevant here because his claim relies solely on section 2024. However, the extensive interrelation between the two sections and the similarity in the policies motivating them makes examination of section 2021 instructive
 
 
 [2]
 The parties dispute whether Friend gave adequate notice that he needed time off for National Guard training. This issue need not be decided because even assuming adequate notice, Friend's claim lacks substantive merit
 
 
 [3]
 Friend refused to discuss with Dr. Hurtubise his medical history or the reasons for his high stress level. Friend also prevented Dr. Yoseloff, the company referred psychologist, from releasing any information to UT/HS
 
 
 [4]
 Friend's personal physician, Dr. Lew, stated that Friend could "return to work as long as he was able to, in my words, walk away from any stressful situation". UT/HS reasonably refused to accept this conditional work release. See Pesterfield v. Tennessee Valley Authority, 941 F.2d 437, 442 (6th Cir.1991) (stating it would be unreasonable to require that an employer place an employee in a stress free environment)
 
 
 [5]
 This conclusion is further supported by the fact that UT/HS was fully aware of Friend's military status before hiring him. See Clayton v. Blachowske Truck Lines, Inc., 640 F.Supp. 172, 174 (D.Minn.1986), aff'd by, 815 F.2d 1203 (8th Cir.1987)
 
 
 [6]
 Friend also attempts to overcome section 2922's presumption by arguing that his employment was not pursuant to an indefinite oral contract, but rather pursuant "to the terms and conditions of a written employment application." However, an application form alone does not constitute an express employment agreement. See Seubert v. McKesson Corp., 273 Cal.Rptr. 296, 299 (1990). Friend's argument would actually be weakened if the application was dispositive. This is because in the application, Friend agreed that his employment could "be terminated with or without cause and with or without notice at any time" and that policy handbooks could not change his employment from being terminable at will
 
 
 [7]
 Even assuming an implied in fact employment contract for termination for cause existed, we do not believe that Friend raised a genuine issue of fact as to the existence of a breach. As discussed in the prior section, UT/HS had legitimate reasons for terminating Friend